**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP,

   *Petitioner*,

  v.

CLC INUDISTRIES LIMITED (formerly
known as Spentex Industries Limited) and
SPENTEX NETHERLANDS B.V.,

   *Respondents*.

Civil Action No. 19-1985 (TJK)

<u>**MEMORANDUM OPINION**</u>

Petitioner Quinn Emanuel Urquhart & Sullivan, LLP, sues to confirm an arbitration

award against Respondents CLC Industries Limited and one of its subsidiaries, Spentex

Netherlands B.V.  For the reasons explained below, the Court will grant its motion for default

judgment and confirm the award.

**I.  Background**

Petitioner Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") is a California

limited liability partnership engaged in the practice of law, with an office in Washington, D.C.

ECF No. 3 ("Petition.") ¶ 2.  Respondent CLC Industries Limited ("CLC") is a cotton and

synthetic yarns manufacturer headquartered in India, and Respondent Spentex Netherlands B.V.

("SNBV") is a subsidiary of CLC.  *Id.* ¶¶ 3–4.  Under an engagement agreement executed in

May 2013, Quinn Emanuel provided legal representation to Respondents in an International

Centre for Settlement of Investments Disputes ("ICSID") arbitration that Respondents brought

against the Republic of Uzbekistan.  *Id.* ¶ 9; ECF No. 3-1 at 4.  The agreement described the

terms and obligations of payment, and Respondents defaulted on their payment obligations.

Petition ¶ 9.  The agreement also contained an arbitration clause detailing the procedures could

use if a dispute arose, Petition ¶ 10, ECF No. 3-1 at 8–9, 54–56, which it did, Petition ¶ 11.

After Respondents failed to pay, Quinn Emanuel pursued arbitration and sought attorneys' fees

and costs.  ECF No. 3-1 at 4.

In 2018, JAMS, an arbitration service in Washington, D.C., conducted a confidential

arbitration, as provided for in the agreement.  ECF No. 3-1 at 4.  Ultimately, though,

Respondents failed to participate in the arbitration.  ECF No. 3-1 at 4–5.  In November 2018, the

arbitrators determined that Respondents had breached the agreement and awarded Quinn

Emanuel $12,772,527.53 with interest of 7.5% per year accruing from December 2016.  Petition

¶ 14.  The arbitrators also ordered Respondents to pay Quinn Emanuel $478,073.60 for the cost

of the arbitration.  *Id.*  Respondents then failed to satisfy the arbitration award.  As of February

2021, Respondents owed Quinn Emanuel $17,728,341.05.  ECF No. 16 ¶ 7.

Quinn Emanuel filed this case to confirm the award under the New York Convention, an

international treaty that provides for recognition and enforcement of foreign arbitration awards,

as codified in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 202.  Petition. ¶ 17.  In July 2019,

Quinn Emanuel served Respondents through both mail and email under their agreement, which

provided that "any service of process associated with any arbitration brought pursuant to this

paragraph, as well as any action to enforce any award issued pursuant to such an arbitration, may

be effectuated by regular mail or courier."  ECF No. 3-1 at 56.  Quinn Emanuel has shown that

its emails attaching the service documents were delivered to and read by the recipients, and that

the packages it sent containing the service documents were delivered and signed for.  *See* ECF

No. 12.  More than 500 days after Quinn Emanuel effected service, and without an answer or

responsive pleading from Respondents, it filed an Affidavit in Support of Default.  ECF No. 16

¶ 6.  Based on this affidavit, the Clerk of the Court entered default against Respondent, ECF No.

15, and Quinn Emanuel moved for default judgment, ECF No. 16.

## II.      Legal Standard

When a defendant fails to defend a case against it, a court has the power to enter default

judgment for the plaintiff.  *See* Fed. R. Civ. P. 55; *Keegel v. Key West & Caribbean Trading Co.*,

627 F.2d 372, 375 n.5 (D.C. Cir. 1980).[1]  "[S]trong policies favor resolution of disputes on their

merits," and so "[t]he default judgment must normally be viewed as available only when the

adversary process has been halted because of an essentially unresponsive party."  *Jackson v.*

*Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft*

*Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Still, "entry of a default judgment is not automatic."  *Mwani v. bin Laden*, 417 F.3d 1, 6

(D.C. Cir. 2005) (footnote omitted).  A court retains its "affirmative obligation" to determine

whether it has subject-matter jurisdiction over the action.  *James Madison Ltd. by Hecht v.*

*Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996).  Additionally, "a court should satisfy itself that it

has personal jurisdiction before entering judgment against an absent defendant."  *Mwani*, 417

F.3d at 6.

## III.     Analysis

### A.      Subject-Matter Jurisdiction

The Court has subject-matter jurisdiction over this action under the FAA.  The FAA

gives district courts original jurisdiction over any action that "falls under" the New York

---

[1] Before a court may enter default judgment against an absent defendant, the plaintiff must first request that the clerk enter default.  *See* Fed. R. Civ. P. 55(a); *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 239 n.1 (D.D.C. 2007).  As noted, upon Quinn's request, the Clerk entered default against Respondents on December 29, 2020.  *See* ECF No. 15.

Convention.  9 U.S.C. § 203.  An action to enforce an arbitration award falls under the New

York Convention when the award "'aris[es] out of a legal relationship, whether contractual or

not, which is considered as commercial' unless that relationship is entirely between U.S. citizens

and lacks other significant foreign connection."  *Customs & Tax Consultancy LLC v. Dem. Rep.*

*Congo*, No. 18-cv-1408 (RJL), 2019 WL 4602143, at *3 (D.D.C. Sept. 23, 2019) (quoting 9

U.S.C. § 202).  In other words, district courts have jurisdiction to enforce an arbitration award

under this provision when "(1) there is a written agreement; (2) the writing provides for

arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial;

and (4) the subject matter is not entirely domestic in scope."  *Africard Co. v. Rep. of Niger*, 210

F. Supp. 3d 119, 123 (D.D.C. 2016).

     Quinn Emanuel's arbitration award meets all four criteria.  The engagement agreement is

in writing and provides that the parties may resolve disputes through arbitration conducted by

JAMS in the United States, a signatory to the New York Convention.  *See* ECF No. 16 ¶¶ 2, 8.

Contracting for the provision of legal services is plainly commercial.  *See Africard*, 210

F. Supp. 3d at 124 ("[T]he term 'commercial' as used in the New York Convention, though it

does not have a specific statutory definition, refers to 'matters or relationships, whether

contractual or not, that arise out of or in connection with commerce.'") (quoting *Belize Soc. Dev.*

*Ltd. v. Gov't of Belize (Belize II)*, 794 F.3d 99, 103–04 (D.C. Cir. 2015)).  And the subject matter

is not entirely domestic in scope; the dispute is between a U.S. entity and a foreign entity over a

contract to provide representation in an arbitration proceeding in Uzbekistan.  *See Africard*, 210

F. Supp. 3d at 123.

#### B.        Personal Jurisdiction

A court should assure itself that it has personal jurisdiction over an absent defendant before entering default.  *See Mwani*, 417 F.3d at 6.  And a predicate for exercising personal jurisdiction is proper service.  Because of the complicated nature of serving foreign entities, the Court will assure itself that it does have personal jurisdiction over the parties before proceeding.

The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") governs service over Respondents as they are foreign entities in India, a signatory to the Hague Convention.  "The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law . . . [and] was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).  The Hague Convention requires all signatories designate a centralized authority through which process can be served.  *See id.* at 706–07.  But working through the centralized authority is not the only way to effect service of process.  In *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504, 1513 (2017), the Supreme Court interpreted Article 10 of the Hague Convention and concluded that "service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law."

India objects to service by mail.  *See Patrick's Rest., LLC v. Singh*, No. 18-cv-00764, 2019 WL 121250, at *3 (D. Minn. Jan. 7, 2019) (noting India's objection to service by mail).  Normally, this objection would require Quinn Emanuel to carry out service in accordance with the Hague Convention by working through the country's established central authority.  *See Revman Int'l, Inc. v. SEL Mfg. Co.*, No. 7:17-cv-01944, 2019 WL 10893956, at *3 (D.S.C. Mar.

26, 2019).  But here, the parties have contracted to effect service of process "associated with any

arbitration . . . as well as any action to enforce any award issued pursuant to such an arbitration

. . . by regular mail or courier."  ECF No. 3-1 at 56.  And other courts have found that the service

provisions of the Hague Convention can be waived through an agreement or contract between

the parties, and a plaintiff or petitioner may comply with the terms of the agreement instead of

the Hague Convention.  *See Revman*, 2019 WL 10893956, at *3, *Masimo Corp. v. Mindray DS*

*USA, Inc.*, 12-cv-2206, 2013 WL 12131723 (C.D. Cal. March 18, 2013); *Alfred E. Mann Living*

*Trust v. ETIRC Aviation S.A.R.L.*, 78 A.D.3d 137, 140 (N.Y. App. Div. 2010); *Rockefeller Tech.*

*Inv. (Asia) VII v. Changzhou Sinotype Tech. Co.*, 460 P.3d. 764 (Cal. 2020).  Given the parties'

agreement that service related to arbitration enforcement may be "effectuated by regular mail or

courier," and upon consideration of Quinn Emanuel's proof of service, the Court is satisfied that

it effected service on Respondents.

Finally, turning to the broader question of personal jurisdiction, courts have held that

agreeing to arbitrate in the District can be construed as consent to personal jurisdiction in the

District.  *See Non-Dietary Exposure Task Force v. Tagros Chems. India, Ltd.*, 309 F.R.D. 66, 68

(D.D.C. 2015).  The agreement states that the "if arbitration is necessary, each arbitration will

. . . [t]ake place in Washington, D.C."  ECF No. 16 ¶ 9.  Thus, the Court has personal jurisdiction

over Respondents.

### C.      Venue

In New York Convention cases, "an action or proceeding over which the district courts

have [subject-matter] jurisdiction . . . may be brought . . . in such court for the district and

division which embraces the place designated in the agreement as the place of arbitration if such

place is within the United States."  9 U.S.C. § 204.  As described above, this Court has subject-

matter jurisdiction over this matter, and the agreement designates Washington, D.C. as the place

for arbitration.  Venue is thus proper here.

**D.      Default Judgment on Quinn Emanuel's Claim**

Turning to the merits, the Court finds that Quinn Emanuel is entitled to default judgment.

Under the New York Convention as codified in the FAA, a district court "shall confirm" an

arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or

enforcement of the award specified in the said Convention."  9 U.S.C. § 207.  Courts have "little

discretion in refusing or deferring enforcement of foreign arbitral awards: the Convention is

'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in

Article V of the Convention.'"  *Belize Soc. Dev. Ltd. v. Gov't of Belize (Belize I)*, 668 F.3d 724,

733 (D.C. Cir. 2012) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C.

Cir. 2007)).

Quinn Emanuel has established by satisfactory evidence that it is entitled to the claimed

amounts and that no grounds for refusal apply.  As explained in Article V of the New York

Convention:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

c) The award deals with a difference not contemplated by or not
falling within the terms of the submission to arbitration, or it
contains decisions on matters beyond the scope of the submission to
arbitration, provided that, if the decisions on matters submitted to
arbitration can be separated from those not so submitted, that
part of the award which contains decisions on matters submitted to
arbitration may be recognized and enforced; or

d) The composition of the arbitral authority or the arbitral procedure
was not in accordance with the agreement of the parties, or, failing
such agreement, was not in accordance with the law of the country
where the arbitration took place; or

e) The award has not yet become binding on the parties, or has been
set aside or suspended by a competent authority of the country in
which, or under the law of which, that award was made.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York

Convention"), art. V(1)(a)–(e), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.  "The party

resisting confirmation 'bears the heavy burden of establishing that one of the grounds for

denying confirmation in Article V applies.'"  *Sterling Merch. Fin. Ltd. v. Rep. of Cabo Verde*,

261 F. Supp. 3d 48, 53 (D.D.C. 2017) (quoting *Gold Reserve, Inc. v. Bolivarian Rep. of Venez.*,

146 F. Supp. 3d 112, 120 (D.D.C. 2015)).  Here, Respondents have defaulted and not raised any

of these defenses; they have thus not met their burden.  *See Africard*, 210 F. Supp. 3d at 127.

The Court also concludes based on its own review of the record that none of the grounds for

denial exist here.  *See Sterling*, 261 F. Supp. 3d at 53.

The New York Convention also provides that recognition and enforcement of an

arbitration award may be refused for the following two reasons, even if the respondent does not

assert them:

[I]f the competent authority in the country where recognition and
enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement
by arbitration under the law of that country; or

          (b) The recognition or enforcement of the award would be contrary
          to the public policy of that country."

New York Convention, art. V(2).  Neither apply here.  Nothing in the record suggests that the

contract dispute at issue is not capable of settlement by arbitration.  *See Africard*, 210 F. Supp.

3d at 127–28 (noting that breach of contract dispute is "surely capable of settlement by

arbitration in the United States").  There is also no reason to believe that enforcing the award

would be contrary to public policy.  Quite the opposite: the Supreme Court has recognized an

"emphatic federal policy in favor of arbitral dispute resolution" that "appl[ies] with special force

in the field of international commerce."  *See Belize I*, 668 F.3d at 727 (quoting *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631(1985)).  Thus, the Court will

confirm the award.

**IV.**     **Conclusion**

       For all the above reasons, the Court will grant Quinn Emanuel's motion for default

judgment and confirm the arbitration award.  A separate order will issue.


                                  /s/ Timothy J. Kelly
                                  TIMOTHY J. KELLY
                                  United States District Judge

Date: June 29, 2021